PEARSON, J.

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| JOSEPH GROSSI, | ) | |
| | ) | CASE NO.  5:10CV1780 |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | JUDGE BENITA Y. PEARSON |
| | ) | |
| TIMOTHY ESCOLA, *et al.*, | ) | **MEMORANDUM OF OPINION** |
| | ) | **AND ORDER** |
| Defendants. | ) | [Resolving ECF No. 15] |

This matter is before the Court based upon Defendants' Motion for Summary Judgement pursuant to Fed. R. Civ. Pro. 56.  ECF No. 15.  Plaintiff Joseph Grossi initiated the action pursuant to 42 U.S.C. § 1983  and supplemental state causes of action claiming that members of the Perry Township, Stark County, Ohio, Police Department improperly arrested him for, and charged him with, aggravated murder.  Grossi has sued Perry Township Police Chief Timothy Escola; Officers James Mizeres, Jeffery Caughey and John Wellman; and the Perry Township Board of Trustees for claims related to the arrest and ensuing prosecution.  For the reasons that follow, the Court grants the motion as to all federal claims and declines to exercise supplemental jurisdiction over the state claims.

### I.  Background

On August 23, 2008, Bruce Bai was found dead in his apartment.  ECF No. 15-4 at 1. Officers from the Perry Township Police Department responded to the scene to investigate.  ECF No. 15-4 at 1.  Bai had sustained one stab wound to his right lower back.  ECF No. 15-4 at 3.

(5:10CV1780)

Bai's wound had been inflicted one or two days prior, and he had died from an aortic puncture.
ECF No. 15 at 2.

Officer Caughey interviewed Bai's mother and Bai's downstairs neighbors. ECF No. 15-5 at 1-2. Caughey learned Grossi had lived with Bai for approximately eight months. ECF No. 15-5 at 2. Additionally, Caughey learned Grossi and Bai frequently argued. ECF No. 15-4 at 2. Chief Escola dispatched officers to Grossi's residence. ECF No. 15-4 at 2.

Caughey and Agent Blanc went to Grossi's parent's house in Waynsburg, where Grossi was living. ECF No. 15 at 3. The officers asked Grossi to go with them for an interview and Grossi agreed. ECF Nos. 15-5 at 2; 15-7 at 12. Grossi's father told the officers before their departure that Grossi suffered from mental health problems and had not taken his medication that evening. ECF No. 17at 2. Grossi takes the medications Abilify and Artane. ECF No. 15-7 at 5-6.

Chief Escola, Caughey and Blanc interviewed Grossi. ECF No. 15-5 at 2-3. Grossi told officers about his relationship with Bai. ECF Nos. 17-1 at 1; 15-4 at 2. Grossi stated that when they lived together, he had been raped by Bai; argued with him frequently; and was confined to his room on several occasions. ECF Nos. 17-1 at 1; 15-4 at 2. The officers never handcuffed, threatened, or promised anything to Grossi. They gave him pop, pizza, and cigarettes. ECF No. 15-7 at 12.

The officers told Grossi during the interview that Bai was dead but did not disclose specific case information to him. ECF No. 15-4 at 2. The officers only said Bai had been "cut"

2

(5:10CV1780)

and died from blood loss.  ECF No. 17-1 at 1.  They did not disclose the number of wounds or location of Bai's injury.  ECF No. 15-4 at 3.

Perry Township Detective Mizeres, in the presence of Officer Wellman, read *Miranda* warnings to Grossi and interviewed him.  ECF No. 15-6 at 2.  Grossi indicated he understood the warnings, and signed a waiver form.  ECF Nos. 15-2 at 2; 15-3 at 9.  Mizeres did not record this part of his interview.  ECF No. 17 at 2.

Grossi initially stated he thought his brother Brenden, friend Gruber, or the family of his girlfriend may have killed Bai.  ECF No. 17-6 at 1.  Mizeres then warned Grossi this was his only opportunity to tell the truth about his involvement in the murder.  ECF No. 17-6 at 1.  Grossi stated he walked to Bai's house from Waynsburg and knocked on his door.  ECF No. 17-6 at 1.  Bai opened the door for Grossi and let him into the residence.  ECF No. 17-6 at 1.  When Bai turned away, Grossi related, he stabbed him in the back with a knife.  ECF No. 17-6 at 1.  Grossi stated he placed the knife in the woods that night and had lost a flashlight he had had with him.  ECF No. 17-6 at 1.  After the murder, Grossi told the officers, he walked the seventeen miles back home.  ECF No. 17-6 at 1.

Mizeres told Grossi he now wanted to conduct a recorded interview.  ECF No. 17-6 at 1.  Grossi received another reading of the *Miranda* warnings.  He agreed to continue speaking with Mizeres.  ECF No. 15-3 at 1.  Grossi again admitted to the crime stating he took a knife and "hit him in the back on the right side."  ECF No. 15-3 at 1.  Grossi stated he killed Bai because he had been previously raped by him.  ECF No. 15-3 at 1.  During this second recounting, Grossi told Mizeres he left the knife in Bai's back.  ECF No. 15-3 at 1.

3

(5:10CV1780)

After giving his recorded statement, Grossi said he had placed items belonging to Bai in a wooded area next to the apartment.  ECF No. 15-4 at 3.  Officers searched the area the following day and recovered several items.  ECF No. 15-5 at 4.  They included, among other items: property from Bai's apartment; a backpack containing an Ohio ID issued to one Thomas D. Davis Jr.; and a full can of Steel Reserve beer.  ECF No. 17-3 at 1.  Officers had earlier found a knife in the area.  ECF No. 17-3 at 1.

On the day officers discovered Bai's body, they had also found a Steel Reserve beer can and a Magnum 40 beer bottle in Bai's kitchen trash can.  ECF Nos. 17-7 at 1; 17-8 at1.  DNA collected from the Steel Reserve beer can matched Thomas D. Davis "to a reasonable degree of scientific certainty."  ECF No. 17-8 at 2.  Testing conducted on the Magnum 40 beer bottle indicated a man called "Verle Ott is a possible source of the DNA on the beer bottle."  ECF No. 17-7 at 2.

The day after Bai was found, and before receiving the results of the DNA tests, Caughey interviewed Davis, who was intoxicated.  Davis stated he had been drinking Steele Reserve beer. Caughey asked Davis about his identification card and Davis responded he lost his wallet the previous week.  Davis hypothesized a man named Verle Ott had placed his wallet at the crime scene.  Davis and Ott had met near where the officers had found the backpack and other items. ECF No. 17-4 at 1-2.

Davis initially denied knowing Bai, but later stated "he was a good dude."  Davis maintained throughout the interview he had never been inside Bai's apartment and Ott must have "set him up."  ECF No. 17-4 at1-2.

4

(5:10CV1780)

During the investigation, Caughey also spoke with Bai's next door neighbor, Susan Salter.  ECF No. 17-2 at 1.  Salter said that three days before the discovery of Bai's body, she had seen two "scary" men walking up Bai's driveway from the rear of his residence.  ECF No. 17-2 at 1.  Salter stated she had never seen either man before.  ECF No. 17-2 at 1.

After Grossi had given his statements, the officers arrested him for the murder.  ECF No. 15-4 at 4.  The Stark County Grand Jury indicated Grossi for Aggravated Murder.  ECF No. 15-1 at 1.  About a year after Grossi's arrest, the County Prosecutor voluntarily dismissed the indictment and Grossi was released from custody.  ECF No. 17 at 3.

Grossi filed this suit, in which he alleges constitutional claims under § 1983 and several pendent state claims.  Grossi's federal claims include 1) arrest, search, seizure and incarceration without probable cause; 2) deprivation of life, liberty, and property without due process of law; and 3) against the Township, negligent hiring, supervision, and training of the defendant officers.

Defendants removed the case to this Court.

## II.  Standard of Review

A party is entitled to summary judgment on motion under Fed.R.Civ.P. 56 where the opposing party fails to show the existence of an essential element for which that party bears the burden of proof.  *Celotex Corp. v. Cartrett*, 477 U.S. 317, 322 (1986).  The movant must initially show the absence of a genuine issue of material fact.  *Id.* at 323.  Once the movant meets that initial burden, the "burden shifts to the nonmoving party [to] set forth specific facts showing there is a genuine issue for trial."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986) (quoting Fed. R. Civ.Pro. 56(e)).  Rule 56(e) "requires the nonmoving party to go beyond the

5

(5:10CV1780)

[unverified] pleadings" and submit admissible evidence supporting its position.  *Celotex, supra,*
*477 U.S. at 324*.  In deciding a motion for summary judgment, the court accepts the opponent's
evidence as true and construe all evidence in the opponent's favor.  *Eastman Kodak Co. v. Image*
*Tech. Servs., Inc.*, *504 U.S. 451, 456 (1992)*.  The movant can prevail only if the materials
offered in support of the motion show there is no genuine issue of a material fact.  *Celotex,*
*supra*, *477 U.S. at 323*.

### III.  Discussion

Section 1983 "does not provide any substantive rights," rather it "authorizes a cause of
action based on the deprivation of civil rights guaranteed by other Acts of Congress."  *Chapman*
*v. Houston Welfare Rights Org.*, *441 U.S. 600, 618 (1979)*.  Successful § 1983 actions require
plaintiff to show defendant acted under color of state law and deprived the plaintiff of, "rights,
privileges, or immunities secured by the Constitution or laws of the United States."  *Parratt v.*
*Taylor*, *451 U.S. 527, 535 (1981)*.  There is no dispute that defendants acted under color of state
law.  Plaintiff must show defendants violated his rights under the Fourth, Fifth and Fourteenth
Amendments.  ECF No. 1-1 at 9.

Because the linchpin of Grossi's claims is whether there was probable cause to arrest,
charge and detain him, the Court addresses that issue first.  Finding that there was ample
probable cause for those events, the Court concludes that Grossi's constitutional claims are
untenable.

(5:10CV1780)

### A.  Probable Cause

The Fourth Amendment to the United States Constitution permits arrest without a warrant when probable cause exists.  "The rule of probable cause is a practical, nontechnical conception ...that has been found for accommodating . . . often opposing interests.  Requiring more would unduly hamper law enforcement.  To allow less would be to leave law-abiding citizens at the mercy of the officers' whim or caprice."  *Brinegar v. United States*, 338 U.S. 160, 176 (1949).

"Probable cause to make an arrest exists if the facts and circumstances within the arresting officer's knowledge 'were sufficient to warrant a prudent man in believing that the [arrestee] had committed or was committing an offense.'"  *Pyles v. Raisor*, 60 F. 3d 1211, 1215 (6th Cir.1995) (quoting *Beck v. Ohio*, 379 U.S. 89, 91(1964)).  "If the facts and circumstances before the officer are such as to warrant a man of prudence and caution in believing that the offence has been committed, it is sufficient."  *Lovell v. Henderson*, 386 F.2d 257, 259 (6th Cir. 1967) (quoting *Stacey v. Emery*, 97 U.S. 642, 645 (1878)).

When making a probable cause determination, the court looks at, "the totality of the circumstances."  *Harris v. Bornhorst*, 513 F.3d 503, 511 (6th Cir. 2008).  In the instant case, the Court concludes that the officers had more than minimal probable cause to arrest Grossi.  He had confessed to killing the victim, with whom he had a history of violent exchanges.  Grossi told the officers that the victim had raped him, thereby providing a motive.  His statements to the officers included facts which the police reasonably believed could only have been known to the victim's assailant.  Officers found items belonging to the victim and the possible murder weapon in the area where Grossi said he had left them.  Accordingly, Defendants had probable cause to arrest

7

(5:10CV1780)

Grossi and the facts available were sufficient to "warrant a man of reasonable caution in the belief" that Grossi had committed murder.  *See Carroll v. United States*, 267 U.S. 132, 162 (1925).

Grossi was arrested and a Stark County Grand Jury indicted him for Aggravated Murder. ECF No. 15-1 at 1.  "[T]he finding of an indictment, fair upon its face, by a properly constituted grand jury, conclusively determines the existence of probable cause for the purpose of holding the accused to answer."  *Ex parte U.S.*, 287 U.S. 241, 250 (1932).  Grossi, however, was indicted after his arrest.  The Court is therefore only considering "the information possessed by the arresting officer at the time of the arrest".  *Harris v. Bornhorst*, 513 F.3d 503, 511 (6th Cir. 2008); *see also Wolfe v. Perry*, 412 F.3d 707, 718-19 (6th Cir.2005).  *Harris v. Bornhorst*, 513 F.3d 503, 511 (6th Cir. 2008).

**B.  Seizure and Detention**

Seizing and transporting a suspect, without probable cause, to a police department for questioning is a violation of the Fourth and Fourteenth Amendments.  *Dunaway v. New York*, 442 U.S. 200, 216 (1979).  That was not the case here.  There is no allegation in the Complaint that the officers held Grossi against his will before his arrest.  He voluntarily agreed to accompany officers.  A suspect who does so cannot allege or prevail upon a claim of involuntary, unfounded detention.  *United States v. Peters*, 194 F. 3d 692, 698 (6th Cir. 1999) ("if the police do nothing to convey to the defendant that he is not free to leave, the encounter does not become a seizure for Fourth Amendment purposes as long as the individual consents to questioning.").  Nor has Grossi alleged that at any point prior to his arrest he either asked that the questioning be

8

(5:10CV1780)

stopped or to be allowed to leave.  No factual evidence asserted by Grossi would support a

finding that he was not free to leave, or that a reasonable individual would have believed he was

not free to leave during the period before his arrest.

Grossi cannot prevail on his claim that the officers unlawfully detained him before his

arrest.

### C.  Due Process Claims

Though the complaint is not a model of clarity, plaintiff appears to assert, or seek to

assert, at least two due process claims:  1) coerced confession; and 2) unlawful prosecution.

Neither has merit.

### 1.  Coerced Confession

Grossi contends the officers, "relied upon, manufactured or otherwise used false evidence

to obtain a coerced false statement and subsequent false criminal charges against Plaintiff and

eventually arrested and incarcerated Plaintiff."  ECF No. 1-1.

To the extent that the reference to "false evidence" means that the officers somehow

deceived Grossi during the questioning, any such deceit does not give rise to a due process claim.

*See Ledbetter v. Edwards*, 35 F.3d 1062, 1067-1069 (6th Cir. 1994) ("there is nothing inherently

wrong with efforts to create a favorable climate for confession.  Neither 'mere emotionalism and

confusion,' nor mere 'trickery' will along necessarily invalidate a confession.").  Rather, a court

considers the totality of the circumstances to determine "whether a defendant's will was

overborne" by considering factors such as: age; education; intelligence; whether defendant

received *Miranda* rights; the length of questioning and the repeated and prolong nature of the

9

(5:10CV1780)

questioning; and use of physical punishment such as sleep deprivation or food." *Id*. at 1067

(citing *Schneckloth v. Bustamonte*, 412 U.S. 218, 226 (1973)).

In the instant case, Grossi does not allege any of the above.  Grossi merely asserts

Defendants knew about his mental health history and the fact that he was taking medication and

had not yet taken it that night when they questioned him.  ECF No. 17 at 2.  This alone is

insufficient to indicate Grossi's will was overborne.

## 2.  Indictment

An indictment, fair on its face, evidences its underlying probable cause.  *Ex parte U.S.,*

*supra*, 287 U.S. at 250.  To the extent that Grossi claims that the prior taint of illegal detention

and a coerced confession tainted the grand jury process, his contentions, for the reasons stated

above, fail.  Just as there was ample probable cause for the officers to arrest and charge Grossi,

there was an ample basis for the prosecutor to present, and the grand jury to rely upon, the same

evidence when seeking and returning the indictment.

The procedure leading to the indictment did not, accordingly, violate Grossi's procedural

due process rights.

## 3.  Post-Indictment Detention

To the extent that Grossi claims his detention while the murder indictment was pending

violated his due process rights, he cannot prevail.  The decision to hold Grossi was a judicial

decision, not one in which the Defendants played a role.  Not having shown preceding

misconduct on the part of the Defendants, Grossi cannot attribute his pretrial incarceration to any

of the Defendants.

10

(5:10CV1780)

## IV.  Conclusion

Viewed from the perspective of the outcome - exoneration, dismissal, and release - the circumstances presented in this case are troubling.  When, however, Grossi's allegations and evidence receives appropriate legal analysis, there can be but one conclusion:  namely, even viewed in a light most favorable to Grossi, he fails to evidence a genuine issue of material fact that Defendants violated his constitutional rights.

The Court dismisses Grossi's federal constitutional claims, and declines to exercise supplemental jurisdiction over his state law claims.  The state law claims are remanded to state court.

It is, therefore, ORDERED THAT:

1.      Defendants' motion for summary judgment (ECF No. 15) is granted as to Grossi's federal claims; and

2.      Grossi's state law claims are remanded to state court.

This matter is closed.


 September 28, 2012                               /s/ Benita Y. Pearson
Date                                            Benita Y. Pearson
                                                United States District Judge

11